## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**STAYCY N. FRANK**,

    Plaintiff,

v.                                    Case No. 8:23-cv-2596-WFJ-AAS

**THE BUILDING INDUSTRY**
**CONSULTING SERVICE**
**INTERNATIONAL, INC.,**

    Defendant.

_____/

## ORDER

Before the Court is Defendant's (or "BICSI") motion to strike Plaintiff's declaration in support of her response to Defendant's motion for summary judgment. Dkt. 90. Plaintiff has responded. Dkt. 92. Defendant has replied. Dkt. 98. For the reasons explained below, Defendant's motion is due to be denied.

### BACKGROUND

By way of procedural background, on January 31, 2025, BICSI filed its motion for summary judgment. Dkt. 70. On March 7, Plaintiff filed her response, supported in part by her signed declaration. Dkts. 77, 79-1. BICSI now moves to strike Plaintiff's declaration, arguing that it is inconsistent with Plaintiff's deposition testimony, Dkt. 63-1, and therefore a sham. Dkt. 90.

1

Specifically, Defendant points to two averments in Plaintiff's declaration that allegedly contradict given deposition testimony: (1) "I was not frustrated with changes in the Marketing Department and did not engage in improper conduct or negative and disruptive behavior," and (2) "I am not an employee of my homeowner's association ("HOA"). . . . The HOA pays me as a 1099 independent contractor. In other words, I did not 'take on outside employment' without permission or otherwise violate the outside work policy." Dkt. 79-1 ¶¶ 3, 9.

BICSI identifies deposition testimony that it believes shows Plaintiff was frustrated with changes in the marketing department, did engage in negative conduct, and was working for her HOA in violation of BICSI's outside employment policy. As will be discussed in more detail below, Plaintiff's declaration is not inherently inconsistent with her deposition testimony such that it should be stricken.

## LEGAL STANDARD

"[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656 (11th Cir. 1984). Specifically, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit

that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657.

This rule is applied sparingly. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987)). "[T]he rule only operates in a limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those which create an issue of credibility or go to the weight of the evidence." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) (quotations and citations omitted). "To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham . . . would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness . . . was stating the truth." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986). Accordingly, there must exist some "inherent inconsistency" between deposition testimony and an affidavit to disregard the affidavit as a sham. *Allen*, 495 F.3d at 1316.

## DISCUSSION

There are three portions of Plaintiff's deposition testimony that her declaration allegedly contradicts. The Court addresses each separately.

3

## I.      Frustration With Changes in the Marketing Department

The deposition testimony Defendant partially cites to show Plaintiff's alleged

frustration with changes in the marketing department is, in full, as follows:

> 7 Q. And then it also -- as you've already agreed,
> 8 you did complain -- you expressed frustration at the
> 9 hiring process for other marketing employees?
> 10 A. No. I did not for other marketing employees.
> 11 Q. You didn't -- you weren't frustrated at the
> 12 hiring process for the marketing department?
> 13 A. Not the other employees, no.
> 14 Q. What were you frustrated about?
> 15 A. I was frustrated. They were bringing an
> 16 underqualified designer in that had fabrications on his
> 17 portfolio.
> 18 Q. And you discussed that with other employees?
> 19 A. Just Jamie, who's the other designer.
> 20 Q. Okay. And you discussed that with the -- with
> 21 Fiorella obviously?
> 22 A. Her and Jamie, yes.

Dkt. 63-1 at p. 156 trans. 155:7–22.

This "underqualified designer" appears to have been hired by BISCI officers

who, in Plaintiff's view, lacked the relevant experience to conduct an effective

background check. Dkt. 63-1 at p. 142–44 trans. 141:20–143:4; *id.* at p. 154 trans.

153:2–15. Plaintiff, although not required to as part of her duties as a graphic

designer, provided feedback on the applicant. *Id.* at p. 141–44 trans. 140:24–143:1;

*id.* at p. 152–54 trans. 151:11–153:1. BICSI disregarded this feedback. *Id.* at p. 141–

44 trans. 140:24–143:1. As a result, Plaintiff was frustrated with the hired

4

"underqualified designer," but "not [the] other marketing employees." *Id.* at p. 156 trans. 155:7–17.

Plaintiff's deposition testimony is not inherently inconsistent with her declaration that she "was not frustrated with changes in the Marketing Department." Dkt. 79-1 ¶ 3. To the extent "changes" in the marketing department refers to the marketing department's hiring process, Plaintiff expressly stated in her deposition that she was not frustrated by the hiring process for other marketing employees. Dkt. 63-1 at p. 156 trans. 155:7–13. She was frustrated by one underqualified designer. *Id.* at p. 156 trans. 155:14–17. This can coexist with not being frustrated by marketing department changes as a whole, whatever those may entail. *See, e.g.*, *Gomez v. City of Miami*, 696 F. Supp. 3d 1176, 1199 (S.D. Fla. 2023), *appeal dismissed*, No. 23-13763, 2024 WL 542017 (11th Cir. Feb. 12, 2024), and *aff'd*, No. 23-13364, 2024 WL 4369605 (11th Cir. Oct. 2, 2024) ("Many of the disputed statements can stand without negating the truth of the other.").

In fact, Plaintiff cites a 2023 email she wrote specifically explaining that the marketing department had experienced many changes in recent years, but those changes were not the source of her concerns at the time. Dkt. 92 at 6. Rather, her grievance was with how she had been treated. *Id.* There is no irreconcilable inconsistency between the deposition testimony and the declaration that warrants striking the declaration as a sham. *See Allen*, 495 F.3d at 1316–17.

## II.    Improper Conduct or Negative and Disruptive Behavior

As for whether Plaintiff engaged in improper conduct or negative and disruptive behavior, BICSI cites deposition testimony wherein Plaintiff admitted to saying, during a company meeting on new health insurance, "And I have no clue what the f*** is going on. It's b***s***." Dkt. 63-1 at p. 56–57 trans. 55:16–56:4. Plaintiff maintains that she was mistakenly unmuted during this online meeting while complaining about not understanding the discussion and not being able to ask questions. Dkt. 92 at 8.

The parties do not dispute that this happened, but instead disagree on whether the incident is fairly characterized as "improper conduct" or "negative and disruptive behavior." Plaintiff stresses the insignificance of the occurrence, with other virtual attendees either disregarding the comment or "laugh[ing] it off as the mistake it was." Dkt. 92 at 8. Plaintiff notes that BICSI did not discipline her at the time, and did not terminate her until more than six months later. *Id.* at 7–8. Defendant urges that this was "indisputably 'improper conduct and insubordinate[1] behavior.'" Dkt. 90 at 4.

This is also not the sort of discrepancy that renders Plaintiff's declaration that she did not engage in negative behavior a sham. *See Allen*, 495 F.3d at 1316–17. In

---

[1] Where the word "insubordinate" comes from is unclear.  Plaintiff's declaration states that she did not engage in "improper conduct or negative and disruptive behavior." Dkt. 79-1 ¶ 3.

6

Plaintiff's version of events, she did not engage in malicious or intentional misconduct. She made a mistake, for which BICSI did not punish her because it was not misconduct. Dkt. 92 at 8. In Defendant's version of events, Plaintiff's comment was insubordination. Dkt. 90 at 4. The parties thus dispute the significance and interpretation of the moment, but it is not necessarily inconsistent for Plaintiff to acknowledge this one accident, and also assert that she did not behave improperly at work. *See, e.g.*, Dkt. 63-1 at p. 152–54 trans. 151:11–153:15 (Plaintiff asserting she behaved appropriately and respectfully regarding interview of job candidate); Dkt. 80-6 at 22:11–23:1 (BICSI acknowledging Plaintiff's positive performance evaluations); *Gomez*, 696 F. Supp. 3d at 1199. The declaration need not be stricken as a sham.

### III.    Plaintiff's Work for the Homeowner's Association

The deposition testimony concerning Plaintiff's work for her homeowner's association is as follows:

> 5 Q. Do you have any other job besides that one?
> 6 A. I -- my association for my townhomes.
> 7 Q. The same place where you live?
> 8 A. Yes. They have me do a onsite coordinator and
> 9 I -- I do that.
> 10 Q. How much do you get paid to do that?
> 11 A. $1,000 a month.
> 12 Q. And how long have you been doing that?
> 13 A. Roughly around three-and-a-half years.
> 14 Q. So you were working as the onsite coordinator
> 15 at your association while you were at BICSII as well?
> 16 A. Correct.

7

17 Q. And that's $1,000 a month?
18 A. Right.

Dkt. 63-1 at p. 20 trans. 19:5–18. BICSI insists that this constituted "outside employment" in violation of company policy, and Plaintiff's declaration that she was permissibly a contractor rather than an HOA employee should therefore be stricken. Dkt. 90 at 4–5.

This seems more a semantical and/or legal dispute over the effect of Plaintiff being a "contractor" on BICSI's outside employment policy than a contest over an inherent inconsistency. There is nothing inconsistent from Plaintiff's deposition to her declaration. She testified at her deposition, in response to Defendant asking whether she had "any other job," that she worked for her HOA. Dkt. 63-1 at p. 20 trans. 19:5–6. In her declaration, she permissibly clarified her response to that ambiguous inquiry, specifying that she is a contractor rather than employee. *See Van T. Junkins*, 736 F.2d at 656–57; *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012) (explaining that when an "apparent contradiction derives not from purposeful fabrication but instead from dialectical misunderstanding, . . . [it] becomes 'an issue of credibility or goes to the weight of the evidence.'" (quoting *Tippens*, 805 F.2d at 953)). In Plaintiff's view, this did not violate BICSI's outside employment policy; in BICSI's view, it did. While this may be a question to be resolved elsewhere, here, there is not an inherent inconsistency that warrants striking the declaration as a sham. *See Allen*, 495 F.3d at 1316–17.

8

## CONCLUSION

Plaintiff's declaration perhaps, at times, reflects nuances in the facts, but it does not present the sort of unexplained factual contradictions that warrant the disfavored measure of striking the declaration as a sham.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**: Defendant's motion to strike Plaintiff's declaration, Dkt. 90, is denied.

**DONE AND ORDERED** in Tampa, Florida, on May 2, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

9